IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CRYSTEL ANN DENNIS,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        CIVIL ACTION NO.: 2:14cv339-WC
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security,)
                                       )
            Defendant.                 )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Crystel Ann Dennis ("Plaintiff") protectively filed an application for supplemental

security income under Title XVI of the Social Security Act ("the Act").  Her application

was denied at the initial administrative level.  Plaintiff then requested and received a

hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ

issued a decision finding Plaintiff not disabled from the date she filed her application,

October 6, 2011, through the date of the decision.  Plaintiff appealed to the Appeals

Council, which rejected her request for review of the ALJ's decision.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case

---

[1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to
Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.   Pl.'s Consent to Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step Four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four.  At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[3] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-three years old at the time she filed her application, and had a ninth-grade education.  Tr. 21, 31.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since October 6, 2011, the application date[.]"  Tr. 15.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "major depressive disorder, anxiety disorder, [and] panic disorder[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  *Id.* at 16.  Next, the ALJ articulated Plaintiff's RFC, in pertinent part, as follows:

> the claimant has the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine repetitive tasks, can occasionally interact with the general public, can work in close proximity with coworkers and supervisors but needs to work independently, can work in a goal oriented job as opposed to a production pace job, can occasionally adapt to changes in the work setting, however, the changes need to be introduced gradually over the course of 1 to 2 days, can maintain attention and concentration for up to 2 hours at a time.

*Id.* at 18.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "is unable to perform any past relevant work[.]"  *Id.* at 21.  Finally, at Step Five, and relying upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can

perform[.]" *Id.* at 21.  The ALJ identified several representative occupations, including "janitor," "automobile detailer," and "kitchen helper."  *Id.* at 22.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 6, 2011, the date the application was filed[.]"  *Id.*

## IV.   PLAINTIFF'S CLAIM

Plaintiff presents as her "Statement Of Issue" whether "[t]he Comissioner's decision should be reversed because the ALJ's decision is not supported by substantial evidence."  Pl.'s Br. (Doc. 11) at 3.  In her "Discussion" section she clarifies her contention that the ALJ's decision is not supported by substantial evidence because the "ALJ erred in rejecting the opinions of examining and treating physicians without providing adequate reasons for this rejection[,]" and, furthermore, that "the medical evidence of record contains no contradicting evidence to support the ALJ's RFC filing [sic]."  *Id.*

## V.   DISCUSSION

Plaintiff first appears to argue that the ALJ erred in her consideration and treatment of the opinion offered by the consultative psychological examiner, Dr. Randall Jordan.  Dr. Jordan evaluated Plaintiff on January 11, 2012.  Tr. 217.  Doctor Jordan reviewed the medical evidence provided by the Disability Determination Service and, in relevant part, noted the following conditions: "depression, anxiety, crying, sleep problems, [and] paranoia[.]"  *Id.*  Plaintiff reported to Dr. Jordan that "she is always

upset, cries al lot [sic], cannot be by herself, is fearful, and gets paranoid thinking someone is out to get her or her children.  This has been ongoing for 1-2 years."  *Id.* Based upon his evaluation of the evidence and examination of Plaintiff, Dr. Jordan's diagnostic impression was "Major Depressive Disorder, recurrent, moderate to severe," and he assigned her a Global Assessment of Functioning ("GAF") score of 45.[4]  Tr. 218. He opined that Plaintiff cannot manage her finances "in a manner consistent with same age peers and allows her husband to as she states she gets mixed up."  Tr. 219.  He further opined that Plaintiff "can function independently," and that, "[i]n terms of vocation," Plaintiff's "ability to carry out and remember instructions of a simple, one-step nature is not compromised.  The claimant cannot do multi-step tasks without some degree of supervision."  *Id.*  Nevertheless, Dr. Jordan further opined that, also as a matter of vocation, Plaintiff's "ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a moderate to severe degree due to psychiatric issues.

---

[4]   The United States Court of Appeals for the Eleventh Circuit recently elaborated upon the meaning of a GAF score as follows:

> GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social and occupational functioning."  *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders*, at 32 (4th ed.1994) (DSM–IV).   A GAF of 31–40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, familiar relations, judgment, thinking, or mood.  *Id.*  A score between 41 and 50 indicates serious symptoms, such as suicidal ideation, serious impairment in social, occupational or school functioning.  *Id.*  A score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational or school functioning.  *Id.*

*Lacina v. Comm'r, Soc. Sec. Admin.*, __ F. App'x __, __, 2015 WL 1453364, *2 n.2 (11th Cir. April 1, 2015).

Physical issues seem to be the primary limiting factor. Continued psychiatric and medical care is needed." *Id.*

In her opinion, the ALJ reviewed in detail Dr. Jordan's consultative examination report. Tr. 19-20. Ultimately, she found Dr. Jordan's report "persuasive[,]" noting Dr. Jordan's opinion that "while the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a moderate to severe degree due to psychiatric issues, physical issues seem to be the primary limiting factor." *Id.* at 20-21 (citing Tr. 219). The ALJ further found that Dr. Jordan's assessment of a GAF score of 45 "is inconsistent with his opinion that the claimant can function independently, and that, in terms of vocation, the claimant's ability to carry out and remember instructions of a simple, one-step nature is not compromised." *Id.* at 21. Accordingly, the ALJ concluded that the RFC she assigned to Plaintiff "fully accommodates" Dr. Jordan's specific findings about Plaintiff's vocational aptitudes. *Id.*

Citing Dr. Jordan's finding that Plaintiff's "ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a moderate to severe degree due to psychiatric issues," Tr. 219, as well as Dr. Jordan's assessment of a GAF score of 45, Plaintiff contends that Dr. Jordan's report "documents [Plaintiff's] inability to perform the mental demands of any level of work activity." Pl.'s Br. (Doc. 11) at 6. She asserts that the "ALJ's reasoning for her rejection of part of Dr. Jordan's opinion is inconsistent and inadequate." *Id.* at 7. In essence, she contends that the ALJ erred in

qualifying Dr. Jordan's more severe findings and limitations by relying upon his separate conclusions that Plaintiff "can function independently" and that her "ability to carry out and remember instructions of a simple, one-step nature is not compromised." *Id.* ("The ALJ assumes Dr. Jordan's statement that Ms. Dennis 'can function independently' somehow negates his assignment of a GAF score of 45[, but that such statement does not do so and, moreover, does not negate] his statement regarding moderate to severe limitations with coworkers, supervisors and every day work pressures.").

Plaintiff's contention that the ALJ committed reversible error in her treatment of Dr. Jordan's consultative opinion is without merit.  As a preliminary matter, if the ALJ may somehow be faulted for utilizing certain of Dr. Jordan's findings to distinguish other of his findings in the same report, Plaintiff is plainly guilty of the converse of the same transgression.  *See* Pl.'s Br. (Doc. 11) at 7 ("Additionally, Dr. Jordan's statement regarding Ms. Dennis' ability to carry out instructions of a simple, one-step nature (Tr. 219) is compromised by his GAF score of 45 and additional limitations, including her moderate to severe degree of limitation in responding well to coworkers, supervision and everyday work pressures[.]").  That is, Dr. Jordan's findings, to the extent they actually can be construed as conflicting, plainly cut both ways.  If Dr. Jordan's findings that Plaintiff can "function independently" and "carry out and remember instructions of a simple, one-step nature" are indeed somehow "compromised" by the GAF score he assigned Plaintiff or his separate conclusion that her ability to respond to coworkers,

supervisors, and work pressures is moderately to severely compromised, then it must be said that the latter findings are in turn "compromised" by the former to the extent all of those factors figure in assessing Plaintiff's ability to function at the level set by the ALJ.

In any event, it is evident that the ALJ's decision in this regard is supported by substantial evidence. Plaintiff stakes too much significance in the GAF score articulated by Dr. Jordan. As the Eleventh Circuit has observed, "a [GAF] score is not dispositive when determining disability." *Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (unpublished decision). Thus, while "GAF scores may be helpful in formulating a claimant's RFC, [they] . . . are not essential to the RFC's accuracy, and an ALJ's failure to describe GAF scores does not render the ALJ's RFC assessment inaccurate." *Thornton v. Comm'r, Soc. Sec. Admin.*, ___ F. App'x ___, ___, 2015 WL 542323, *7 (11th Cir. Feb. 11, 2015) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Accordingly, even if a GAF score of 45 broadly, and vaguely, indicates some "serious symptoms," *id.*, the ALJ was warranted in concluding that, as a matter of Plaintiff's discrete identifiable vocational abilities, Dr. Jordan's more specific findings that Plaintiff "can function independently" and can "carry out and remember instructions of a simple, one-step nature" provides substantial support for the ALJ's decision to discredit the GAF score to the extent it would conflict with Plaintiff's RFC.

Likewise, the ALJ was justified in noting that, while Dr. Jordan opined that Plaintiff's "ability to respond well to coworkers, supervision, and everyday work

pressures is compromised to a moderate to severe degree," Dr. Jordan clearly indicated his belief that "[p]hysical issues seem to be the primary limiting factor" causing such restrictions.  Tr. 219.  Of course, none of the "physical issues" described by Plaintiff at the hearing, including back pain and medication side effects, *see* Tr. 31, 35, were found by the ALJ to constitute severe impairments and Plaintiff has not challenged the ALJ's conclusions in that regard.  As such, substantial evidence supports the ALJ's decision to distinguish Dr. Jordan's opinion to the extent he opined that Plaintiff's vocational abilities are limited by her non-severe physical impairments.

Plaintiff also asserts that the ALJ reversibly erred in rejecting the opinion of her treating physician, Dr. Yongkuma.  Pl.'s Br. (Doc. 11) at 7-8.  The opinion evidence which Plaintiff identifies as having been erroneously rejected is a form completed by Dr. Yongkuma on January 14, 2013, just over a week prior to the evidentiary hearing before the ALJ, in which he was asked to rate the degree of impairment or constriction of Plaintiff's abilities in a number of mental activities.  Tr. 240-42.  Apart from Dr. Yongkuma's less troubling findings, he opined that Plaintiff would experience "Marked" limitations or restrictions in a number of such activities, including the following: "ability to interact appropriately with the general public"; ability to carry out "daily activities" like attending meetings, performing housework, an socializing with friends and neighbors; "ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances"; "ability to complete a normal workday and

11

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "ability to respond to customary work pressures." *Id.*   Alongside these more restrictive findings regarding a few of Plaintiff's mental activities, Dr. Yongkuma found that Plaintiff is only mildly or moderately impaired or limited in a number of mental activities which are vocationally significant and which, furthermore,  appear consistent with the RFC articulated by the ALJ.   For example, despite his opinion regarding Plaintiff's ability to interact with the general public, Dr. Yongkuma opined that Plaintiff is only mildly impaired in her "ability to get along with co-workers or peers."  Tr. 240.  Similar to Dr. Jordan, Dr. Yongkuma opined that Plaintiff has only mild impairment in her "ability to understand, remember and carry out simple [and complex] instructions."  Tr. 240-41.  He further opined that Plaintiff has only mild impairment in both her "ability to understand, remember and carry out repetitive tasks" and in her "ability to respond appropriately to supervision."  Tr. 241.  Likewise, Dr. Yongkuma opined that Plaintiff is moderately impaired in her "ability to maintain attention and concentration for extended periods," "to sustain a routine without special supervision," "to make simple work-related decisions," and "to respond appropriately to changes in the work setting."  Tr. 241.

The ALJ reviewed the medical evidence of Dr. Yongkuma's treatment of Plaintiff. Tr. 19-20.  She rejected Dr. Yongkuma's opinion that Plaintiff suffers marked restrictions in her daily activities because "this finding is inconsistent with the claimant's daily

activities and Dr. Yongkuma's treatment notes." Tr. 16. As for Dr. Yongkuma's assertion that Plaintiff suffers from "marked" limitations in certain mental activities, the ALJ found such opinion "not persuasive as Dr. Yongkuma is not a mental health specialist, unlike Dr. Jordan[,]" whose opinion the ALJ found more credible on matters related to Plaintiff's mental health. Tr. 21.

Plaintiff contends that, "[a]s a treating physician, the ALJ should have assigned Dr. Yongkuma's opinion substantial weight or clearly articulated reasons for failing to give his opinion less weight." Pl.'s Br. (Doc. 11) at 8. She maintains that the ALJ "failed to adequately articulate reasons for her dismissal of Dr. Yongkuma's opinion." *Id.* In *Lacina*, the Eleventh Circuit explained the deference Social Security regulations ordinarily accord treating source opinion like that of a treating physician:

> [T]he opinion of a treating source (i.e., a medical professional who is able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)) is usually entitled to greater weight than the opinion of a medical professional who sees the claimant only once or for a brief period of time. An ALJ will also consider: the length, frequency, and nature of the provider-patient relationship, the extent to which a provider or other source presents relevant medical evidence to support his opinion, and the consistency of an opinion with the record as a whole.

2015 WL 1453364, *5 n.6 (internal quotations and citations omitted). Where medical source opinion is credited as a treating source opinion, it is ordinarily entitled to deference. "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation omitted).

13

> Good cause exists when the: (1) treating physician's opinion was not
> bolstered by the evidence; (2) evidence supported a contrary finding; or (3)
> treating physician's opinion was conclusory or inconsistent with the
> doctor's own medical records.  With good cause, an ALJ may disregard a
> treating physician's opinion, but he must clearly articulate [the] reasons for
> doing so.

*Id.* (quotations and citations omitted).

To the extent the ALJ indeed rejected Dr. Yongkuma's opinion as asserted by Plaintiff, the ALJ's decision is supported by substantial evidence.  First, the ALJ is correct that Dr. Yongkuma's assessment that Plaintiff suffers a marked degree of restriction on her daily activities is not supported by Plaintiff's own description of her daily activities or Dr. Yongkuma's treatment notes.  In pertinent part, Dr. Yongkuma opined that Plaintiff's ability to function with respect to her daily activities, such as working around the house, is seriously affected.  Tr. 240.  However, Plaintiff testified that she does household laundry (Tr. 34) and washes dishes (Tr. 35), and she also indicated in her Function Report that she prepares her own meals (Tr. 150), does housework for two hours at a time, three times per week (Tr. 150), and goes grocery shopping (Tr. 151).  Because nothing in Dr. Yongkuma's treatment notes reflects the serious impairment to Plaintiff's ability to perform daily activities which he indicates on the form highlighted by Plaintiff,[5] and her own testimony and self-reporting does not

---

[5]   In general, the treatment notes of Dr. Yongkuma's brief treatment relationship with Plaintiff indicate that Plaintiff responded well to prescribed medications for her depression and anxiety issues when she was compliant with the regimen prescribed by Dr. Yongkuma.  *See, e.g.*, Tr. 228 (Plaintiff reports feeling "much better" and Dr. Yongkuma remarks that Plaintiff "seems to be doing very well" with 1mg dose of Xanax), 227 (Plaintiff reports "feeling much better" and that

otherwise substantiate the severity of Dr. Yongkuma's opinion, the ALJ's decision to reject that portion of Dr. Yongkuma's opinion is supported by substantial evidence.

The ALJ was further justified in favoring the opinion of Dr. Jordan over that of Dr. Yongkuma regarding the several "marked" limitations the latter source indicated with respect to the mental activities of Plaintiff.   In general, the Commissioner gives the opinions of "specialists on issues within their areas of expertise more weight than non-specialists." *Davis v. Barnhart*, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished decision).   Plaintiff has not challenged the ALJ's finding that Dr. Yongkuma is not a "mental health specialist."   As such, the ALJ was justified in affording Dr. Jordan's opinion greater weight to the extent which it found Plaintiff less restricted or limited in her ability to function in the areas where Dr. Yongkuma found "marked" impairments.

Finally, the ALJ was justified in affording Dr. Yongkuma's opinion less than substantial weight because it is conclusory.   As noted above, the ALJ carefully reviewed Dr. Yongkuma's treatment notes from his brief history treating Plaintiff.   Tr. 19-20. Apart from Plaintiff's generalized complaints of depression or anxiety issues reflected in the notes, none of Dr. Yongkuma's treatment notes appear to provide a clear objective basis for the several "marked" limitations which he attributes to Plaintiff.   This is especially salient in view of the fact that the form opinion completed by Dr. Yongkuma clearly anticipates that Dr. Yongkuma would complete a "narrative report" providing

---

"she has dealt with her social issues and is actually doing much better from that perspective").

information regarding his opinion.  *See* Tr. 240.  However, no such "narrative report" has been made a part of the record in this case.  Indeed, Dr. Yongkuma even left blank the "Comments" section at the end of the form where, presumably, he might have provided at least a brief statement establishing the basis for some of his more limiting findings and how those findings might be reconciled with the numerous other mental activities which plainly touch on Plaintiff's ability to work and in which Dr. Yongkuma opined that Plaintiff suffers only "Mild" or "Moderate" restrictions or limitations.  Accordingly, the ALJ was justified in failing to fully credit Dr. Yongkuma's opinion because it was conclusory.

The court finds that Plaintiff's claims that the ALJ reversibly erred in failing to sufficiently articulate her rejection of portions of the opinions of Drs. Jordan and Yongkuma are without merit, and that the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.   A separate judgment will issue.

Done this 27th day of April, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE